UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA

    -against-

MICHAEL PERSICO,

        *Defendant.*

------------------------------------------------------------X

10 CR 147 (DLI)

# DEFENDANT MICHAEL PERSICO'S
# REPLY SENTENCING SUBMISSION

| | | |
|---|---|---|
| Marc Fernich | Maurice Sercarz | Sarita Kedia |
| Law Office of Marc Fernich | Sercarz & Riopelle | Sarita Kedia Law Offices |
| 810 Seventh Avenue | 810 Seventh Avenue | 5 East 22nd Street |
| Suite 620 | Suite 620 | Suite 7B |
| New York, NY 10019 | New York, NY 10019 | New York, NY 10010 |
| (212) 446-2346 | (212) 586-4900 | (212) 681-0202 |

**PRELIMINARY STATEMENT**

We respectfully submit numerous additional letters of support written on behalf of Michael Persico and briefly reply to the government's sentencing submission.[1]

## I. MICHAEL PERSICO'S HISTORY AND CHARACTERISTICS

Though more than a hundred letters from friends, family and colleagues unanimously describe Mr. Persico as an honest, hard-working and loving father who has always endeavored to lead a law-abiding life, the government argues that the offense of conviction was not aberrational because loansharking is "a staple LCN crime" which Mr. Persico "committed over a long period of time." Govt. Sent. Ltr. (ECF 857) at 3. First, as the evidence shows, the loan at issue was not the type of "loansharking" advance that is "a staple LCN crime." As we previously explained, at Theodore Persico Jr.'s request, Michael Persico asked a business associate, Anthony Preza, to provide a $100,000 loan to a trucking company owned by Theodore, James Bombino and Steven Marcus to enable the company to buy additional trucks and take on more work. *See* Def. Sent. Sub. (ECF 856) at 4-7. The borrowers initially agreed that the principal plus $10,000 would be returned in sixty to ninety days. *Id.* No principal or interest payments were ever made, however, and no threats, express or implied, ensued – facts the government does not contest. *Id.* Neither Mr. Persico nor Mr. Preza profited from this transaction; rather, Mr. Preza lost $100,000. *Id.*[2]

Second, the only evidence the government offered to prove Mr. Persico's purported involvement in loansharking prior to this occasion was the testimony of Anthony Russo, a patently unreliable witness. Not only was his testimony wholly contradictory, Russo intentionally destroyed his loansharking records after he began cooperating, undoubtedly

---

[1] The additional letters of support are annexed in alphabetical order by the author's last name as Ex. 5.

[2] The government erroneously states that Mr. Persico extended the loan through Mr. Preza. Though Mr. Persico made various business investments with Mr. Preza, they were not associated with the loan. It was Mr. Preza who extended the loan and ultimately lost the money.

1

because they did not substantiate his claims regarding Michael Persico's involvement. *See* Def. Br. (ECF 848) at 22-23 and Def. Resp. Br. (ECF 854) at 4, 8-9. Indeed, neither Russo nor the government even offered an alternate explanation for Russo's post-cooperation destruction of this critical evidence. Though the government attempted to discount Russo's obstructive act, arguing that the records would "not likely" have dated back to the mid-90's (Govt. Resp. Mem. (ECF 853) at 15), Russo contradicted this assertion. To be sure, Russo admitted that a $10,000 debt by "Lenny," whom Russo lent money he purportedly borrowed from Michael Persico, had been documented in the destroyed records. *See* Def. Resp. Br. at 8-9. Further, the government's decision to give Russo a cooperation agreement and make a downward departure motion on his behalf despite its knowledge of Russo's post-cooperation obstruction substantiates Russo's pre-cooperation view that the government would reward anyone who was willing to implicate Michael Persico, even if falsely. *See* Def. Br. at 8-10; Def. Sent. Sub. at 8-9. In truth, Russo's recorded pre-cooperation admissions that Michael is "truly legitimate" and "has nothing to do with anything" in the Colombo family (*see* Def. Br. at 4-7, Ex. E and E(T) (ECF 849)) – statements supported by the voluminous letters submitted on Mr. Persico's behalf – are far more credible than the fabrications Russo later invented to save himself from dying in prison.

In support of its bid for a 37-46 month prison sentence, the government then recites Mr. Persico's alleged involvement in additional crimes. Again, it offers **nothing** but Russo's testimony to support its claims, and it disregards entirely Russo's numerous acknowledgements, made when confiding in criminal cohorts, that belie his current contentions. *See id.* Indeed, the government even continues to maintain that in 2008 Mr. Persico gave advice to Russo about how to behave after he was inducted into the Colombo family (Govt. Sent. Ltr. at 4), despite the facts that (1) Mr. Persico himself is not an inducted member – *which in itself speaks volumes* – and (2) the telephone records show that Mr. Persico did not speak to Russo in 2008 and barely spoke with him after. *See* Def. Resp. Br. at 2, Ex. YYY and Ex. ZZZ (ECF 854).

2

The government also continues to argue that Michael Persico provided the firearms used in the Scopo murder even though its cooperating witness Salvatore Miciotta (whom it initially tried to renounce) controverts Russo's claims. Though Miciotta may not have been privy to each and every detail regarding the Scopo murder, he most certainly had significant information about the people involved. And critically, Miciotta, who knew Basciano well, purchased guns from Basciano himself and had no reason to falsely implicate Basciano, categorically informed that "the gun(s) utilized in the [Scopo] murder were p[ur]chased from Dino Basciano." Def. Br. at 20 and Ex. PPP. Further, Miciotta's information is far more plausible than Russo's given that (1) Basciano and Eric Curcio (who planned and participated in the hit) were partners in numerous crimes and (2) Basciano conceded that he sold guns exactly like that used in the Scopo murder and quite possibly that very one. *See* Def. Br. at 20-21. Additionally, it is clear from Russo's testimony that he already possessed the Mac-10 used in the Scopo homicide during attempts to kill Cutolo, which occurred before any Scopo attempts and before Michael Persico's ostensible involvement. *See id.* at 12-13; Def. Resp. Br. at 7.

Perplexingly, while claiming that Michael Persico assisted Russo in starting a car-detailing business to demonstrate Michael's involvement in "racketeering" (Govt. Sent. Ltr. at 4), the government also contends that Michael simultaneously "extorted" Russo and Anthony Stropoli out of the valet parking business. *Id.* at 5. As an initial matter, the government has still not shown how the facts Russo described on the valet issue – even if true – constitute extortion or any crime. The government also fails to explain why the indictment and the sworn affidavit submitted by FBI Agent Adam place the valet interaction at an entirely different time period than that to which Russo testified. *See* Def. Resp. Br. at 9. And notably, at the time of the alleged extortion, Russo was an inducted member of the Colombo family (FH 113); Stropoli was acting as captain on behalf of Theodore Persico Jr. (Def. Br., Ex. U and U(T)); and Michael Persico had no status, hence being labelled an "associate" by the government.

3

## II. THE COURT SHOULD NOT SENTENCE MR. PERSICO DISPARATELY

The government does not deny that the Court did not consider – nor did the government ask it to – unconvicted conduct with respect to any other defendant who pleaded guilty in this case. Nor does it contest that each and every co-defendant who pleaded guilty was sentenced below the Guidelines or at the bottom end where the Guidelines range was 0-6 months. Rather, the government claims that Preza (who received a below-Guidelines sentence of probation) is not similarly situated to Mr. Persico principally because "Preza does not share [Mr. Persico's] lengthy history of committing serious crimes." Govt. Sent. Ltr. at 6. First, the government charged Preza with crimes in addition to that to which he pleaded guilty – including "racketeering" and the "extortion" the government asks the Court to consider here – but did not ask the Court to consider them in sentencing Preza. And second, Mr. Persico has no prior criminal record and, despite its best efforts over 25 years due to his last name and blood relations, the government has thoroughly failed to prove him guilty of any unconvicted conduct.

Likewise, the comparison to Guerra is hardly "strained" (*id.*), for the sole point made regarding Guerra is that even he received a Guidelines sentence despite having proceeded to trial. *See* Def. Sent. Sub. at 31. Indeed, though the Court found Guerra's direct participation in multiple murders proven, it still imposed a sentence within the Guidelines range for his offenses of conviction rather than the 20-year sentence sought by the government. *Id.*

Thus, there is no question that imposing even a Guidelines sentence upon Mr. Persico would be treating him disparately.

## III. MR. PERSICO'S FAMILY CIRCUMSTANCES WARRANT A SENTENCE OF TIME SERVED

While acknowledging that the circumstances suffered by Mr. Persico's two youngest daughters are "extremely sympathetic," the government argues that the loss of their mother is not "sufficiently extraordinary" to support a sentence of time served because they are in their early

4

20s. *See* Govt. Sent. Ltr. at 5. But the fact remains that these two girls have suffered a loss no child should endure and they continue to be wholly reliant upon their only remaining parent – their father. Both girls still live at home with Michael as their solitary source of emotional and financial support and to lose him for any period of time would simply be cruel and unjust.

With respect to Michael's elderly mother, although he does have two sisters to assist in caring for her, his sister Barbara works full-time and has a single daughter with an infant child, whom she helps raise. Michael's other sister Susan is a full-time school teacher and raises three young children. Michael's two older children, both of whom are also employed full-time, do not even reside in Brooklyn. Therefore, Michael's assistance is essential.

## CONCLUSION

Through the various submissions made in advance of Mr. Persico's sentencing, the Court can undoubtedly see that Mr. Persico's true character is far removed from that which the offense of conviction would suggest. Indeed, the extraordinary letters submitted on his behalf show that he is not the person the government portrays him to be. He has endeavored to live his life in a law-abiding manner and to hold himself to the highest morals and standards. He has been generous, kind and incredibly charitable throughout his life. In light of these remarkable character traits, we respectfully ask the Court to impose a sentence of time-served, which is "sufficient, but not greater than necessary," so that Mr. Persico can continue caring for his family, serving his community and contributing positively to society.

Dated: New York, New York
October 25, 2016

> Respectfully submitted,
> /s/
> Marc Fernich
> Maurice Sercarz
> Sarita Kedia

5